M. E. LEMERY *vs*. EDITH E. TWOMBLY, executrix.

Middlesex.    May 12, 13, 1932. — November 25, 1932.

Present: RUGG, C.J., WAIT, FIELD, & DONAHUE, JJ.

*Actionable Tort. Deceit. Agency*, Agent's liability for false representation of authority.

At the trial of an action of tort for a loss resulting from reliance by the plaintiff upon an alleged representation that the defendant had authority to bind a town in the execution of a contract for the purchase of certain materials, it appeared that the defendant was a member of a board authorized to make a contract of that character; and that a by-law of the town then in force provided that no contract made by any board should be binding on the town unless it was in writing and was signed by a majority of the members of the board. No question of an appropriation by the town was raised. There was evidence that the defendant, who knew of the by-law, stated to the plaintiff that he had authority from the board in question to sign the contract; that he did sign the contract in behalf of the town; that the plaintiff, who did not know of the by-law, did not make any inquiry as to the authority of the board or of the defendant to sign the contract, and did not attempt to secure the signature of another member of the board; and that the defendant had no intent to defraud the plaintiff. *Held*, that

(1) Assuming that the statement made by the defendant to the plaintiff was a representation that the contract was binding on the town without any other signature than that of the defendant, nevertheless the plaintiff, in making a contract with a municipality, should have informed himself as to the requirements necessary to make it valid; the plaintiff was not entitled to rely upon the defendant's representation;

(2) The evidence did not warrant a finding that the defendant was guilty of active misfeasance in failing to call the plaintiff's attention to the by-law or otherwise;

(3) The plaintiff could not recover.

CONTRACT OR TORT, originally against Horatio F. Twombly. Writ dated January 5, 1931.

The action was tried in the Superior Court before *J. J. Burns*, J. Material evidence is stated in the opinion. The action was submitted to the jury upon the count in tort. Subject to leave reserved under G. L. (Ter. Ed.) c. 231, § 120, a verdict for the plaintiff in the sum of $715 was recorded. Thereafter the judge ordered entered a verdict for the defendant. The plaintiff alleged an exception. The defendant having died thereafter, the executrix of his will was admitted to defend. The testator, Horatio F. Twombly, is referred to as the defendant in the opinion.

R. B. Owen, (A. W. Lawrence with him,) for the plaintiff.

A. G. Mainini, (A. Z. Lemoine with him,) for the defendant.

WAIT, J. The plaintiff sues in contract or tort to recover against the defendant loss resulting from reliance upon an alleged representation that the defendant had authority to bind the town of Framingham in the execution of a contract for purchase of certain oil for use upon its streets.

The following facts are not disputed. The defendant, as chairman, with James Shay and Arthur C. Winch constituted the board of commissioners of public works for the town of Framingham in 1926. The board is authorized by St. 1914, c. 701. A by-law, in force throughout 1926, provided that no contract purporting to be made by any board should be binding upon the town unless it was in writing and signed by a majority of the members of the board. The board had authority to make the contract alleged to have been made; and no question of appropriation is raised. At a meeting, on April 26, 1926, the board voted in regard to proposals for road oil that: "the contract be awarded to the M. E. Lemery Co., distributors for the Independent Refining Co., provided they can present a certified check for $500.00. They being the lowest bidders." The plaintiff does business as the M. E. Lemery Co. She made a bid to the board of commissioners for about sixty-eight thousand eight hundred gallons of one kind of oil and about seventeen thousand gallons of another kind to be delivered over the customary road oil season and applied to the streets by her. On orders or

telephone calls from the chairman of the board of public
works or his office, thirty thousand gallons of the sixty-
eight thousand eight hundred were delivered. None was
paid for.

There was evidence that a representative of the plaintiff,
in April, 1926, called upon the defendant and was taken
into his private office off the main meeting room of the
board, where the defendant told him that he had been
delegated and had authority from the board to sign a con-
tract. The defendant dictated an agreement, had it typed
and signed it. The representative signed the plaintiff's
name. The written contract had been lost when the plain-
tiff's office had been broken into, her safe entered and papers
destroyed. It was in form a contract between the plaintiff
and the town of Framingham through its board of commis-
sioners of public works and signed by "Commissioners of
Public Works, by H. F. Twombly, Chairman." At some time,
but whether before or after the signing the representative
could not fix, one Shay of the board told him that "the
defendant . . . was authorized to go ahead and sign all
contracts." A certified check for $500 was furnished.
This later was returned by the town treasurer. A letter
dated April 29, 1926, to the board reciting some of the
terms of the contract thus guaranteed was delivered with
the check. Letters to the plaintiff in September of 1926
and January of 1927, signed by the defendant as chairman
of the board, regretted that the oil due "under our agree-
ment" had not been needed, and "the unfortunate experi-
ence that we had last year, which was due to my absence
abroad and not due to any fault of yours." They sug-
gested a call upon him and an effort to arrange the matter.
No effort was made before the bidding to learn the authority
of the board to act. The plaintiff did not know of the by-
law. She never made such inquiries, though she did business
with towns and cities all over New England. An examina-
tion of the records of the board disclosed no letters relating
to the matter. The representative testified that he did not
believe the defendant had any intention of defrauding him.
The defendant had drawn the by-law and knew its contents.

The representative did not try to get any other signature, because the defendant had stated that he was authorized to sign contracts. The defendant introduced evidence that no contract was ever signed; and that no statements were made that the defendant had authority to sign the alleged contract. There was evidence of damage.

The case was submitted to the jury only on the count in tort. After verdict for the plaintiff, the judge, pursuant to leave reserved under G. L. (Ter. Ed.) c. 231, § 120, ordered entry of judgment for the defendant. The only exception is to this order and ruling.

We are concerned simply with the question whether, as matter of law, a liability in tort on the part of the defendant can be predicated on this evidence. Obviously it will sustain findings that a public official stated that he was authorized to sign a contract for road oil with the plaintiff on the terms which the written contract contained; and that he did sign such a contract. Does it, however, go far enough to sustain a finding that he represented that the contract to be binding upon the town needed no signature other than his own? Unless the latter representation was made, it is clear that no false representation is proved. The defendant undoubtedly possessed authority to prepare and sign a contract, by virtue of the vote of the board passed on April 26, 1926. The words he is said to have used are: "Now, I have authority to sign this, and am authorized to do it." It was admitted that a by-law then in force required the signatures of a majority of a board to validate any contract made by the board which was to bind the town. The plaintiff's difficulty arose from failing to get also a signature of another member of the board. She failed to obtain a binding contract with the town, not because of lack of authority in the defendant or the board of which he was chairman to execute a contract, but because of failure to meet the requirements of the by-law. Neither she nor her representative knew of this by-law. The defendant knew of it. If we assume that the jury could find that the words of the defendant in the circumstances could be taken to mean in substance: "My authorized signature makes

this a binding contract" and, thus, sustain the claim that
a representation was made that the contract as it stood was
a valid one, it still remains to determine whether the plain-
tiff was entitled to rely upon that representation and hold
the defendant liable therefor.

We have no doubt that generally one who has failed to
obtain a valid contract with a principal, because the agent
who makes the contract on the principal's behalf lacks
authority to act, through reliance upon the agent's un-
truthful representation that he had authority, can hold
that agent liable for loss. *Jefts* v. *York,* 10 Cush. 392.
*Bartlett* v. *Tucker,* 104 Mass. 336. *Peoples National Bank*
v. *Dixwell,* 217 Mass. 436. *Boston & Albany Railroad* v.
*Richardson,* 135 Mass. 473. Our decisions have estab-
lished that the remedy is in tort, *Mendelsohn* v. *Holton,*
253 Mass. 362; and that fraudulent intent on the part of
the agent is not essential to liability. *May* v. *Western
Union Telegraph Co.* 112 Mass. 90. *Conant* v. *Alvord,* 166
Mass. 311. No case, however, is called to our attention,
and we are aware of none, which has decided that a rep-
resentation by a public official with regard to his authority
to bind a municipality by contract made without fraudulent
intent may be relied upon by the party to whom it is made
and will sustain an action against the official. We think
there is a duty resting upon one who seeks to contract
with a municipality to inform himself with regard to its
powers to enter into contracts and the forms required.
Here, slight investigation would have disclosed the exist-
ence of the by-law requiring the signature of a majority of
any board acting for the municipality. No investigation
was made. The statement of the defendant was accurate
so far as it went. No purpose to conceal the requisite
number of signatures or to defraud the plaintiff appears.
In such circumstances the law does not imply active mis-
feasance in the failure to call attention to the by-law. The
evidence did not go far enough to show active misfeasance.

*Exceptions overruled.*